**In re R.H. MACY & CO., INC., et al., Debtors.**

**Bankruptcy No. 92–B–40477 (BRL).**

United States Bankruptcy Court, S.D. New York.

Oct. 20, 1994.

As Corrected Oct. 27, 1994.

---

Weil, Gotshal & Manges by Howard A. Blaustein, Beth Rosen, New York City, for debtors.

Katten Muchin & Zavis by Jeff J. Marwill, Chicago, IL, for Equity Properties Development Ltd. Partnership.

Otterbourg, Steindler Houston & Rosen, P.C. by Debra Sudock, New York City, for Unsecured Creditors' Committee.

*MEMORANDUM DECISION ON MOTION FOR ORDER COMPELLING PAYMENT OF CERTAIN CHARGES AS ADMINISTRATIVE EXPENSES*

BURTON R. LIFLAND, Chief Judge.

*Introduction*

Equity Properties and Development Limited Partnership, as agent of the owner of Monmouth Mall, Eatontown, New Jersey ("EPDLP") asks this court to order payment, as administrative expenses, of certain common area charges and real estate taxes. It asserts that these charges are post-petition claims against the debtor and should be paid pursuant to section 503(b) of the Bankruptcy Code.[1] R.H. Macy & Co., Inc., et. al., ("Macy's") does not dispute that the charges are owed. However, it asserts that they arose pre-petition and are, therefore, not entitled to administrative expense status.

*Facts*

The facts of this case are straightforward and not subject to dispute.

Macy's filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 27, 1992 (the "Petition Date") and continues to manage its properties as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

Macy's operates a retail department store at the Monmouth Mall (the "Shopping Center") in Eatontown, New Jersey (the "Store"). The Store and the real property on which the Store is located are owned by Bamproperties, Corp., one of the above captioned debtors in possession. The operation and maintenance of the Shopping Center common area is subject to the terms and conditions of a certain master agreement entitled "Restatement of Operating Agreement," dated April 1, 1974, as amended (the "Master Agreement"), among, inter alia, EPDLP, as successor in interest to U.S.I.F. Wynnewood Corporation, and Macy's. The Master Agreement contains certain provisions requiring, among other things, Macy's to make certain payments to EPDLP during the term of the agreement in respect of taxes and common area charges.

As of this motion, Macy's remains obligated for certain outstanding unpaid common charges and taxes due and owing under the Agreement. Specifically, EPDLP billed the Debtor on February 5, 1992 for its share of the 1991 annual common area maintenance adjustment charges in the amount of $227,897.73. On November 16, 1992, EPDLP

---

1. Section 503(b)(1) of the Bankruptcy Code provides, in relevant part:

    (b) After notice and a hearing, there shall be allowed administrative expenses ... including—

    (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.
    11 U.S.C. 503(b)(1)(A) (1994).

billed Macy's in connection with the 1992 annual real estate taxes, Macy's share of which was $178,836.73. Macy's paid $164,047.90, leaving a balance of $14,690.86. On August 6, 1993, EPDLP billed Macy's for its share of the 1992 annual common area maintenance charges in the amount of $218,712.32. Macy's paid $200,735.96, leaving a balance of $17,976.32. The three balances aggregate $260,564.95 (the "Claims").[2]

Macy's does not dispute that it is responsible for the Claims. However, it contends that the Claims are pre-petition unsecured claims rather than post-petition administrative expenses.

## Discussion

■ EPDLP argues that this court has already decided the issue raised in this motion. It asserts that *In re R.H. Macy & Co.*, 152 B.R. 869 (Bankr.S.D.N.Y.1993), *aff'd*, No. 93 Civ. 4414, 1994 WL 482948 (S.D.N.Y. February 24, 1994) ("*Macy's I*") analyzed indistinguishable facts and compels judgment in its favor. In *Macy's I*, the issue before the court was whether section 365(d)(3)[3] mandated that the debtor pay real estate taxes that became obligations of the debtor under a non-residential real property lease after the petition date. This court held that due to the, perhaps ill-suited, use of the term "obligation" rather than "claim" in the statute, the relevant inquiry was when the debtor became obligated to pay the debt as opposed to when the claim (as defined by the Bankruptcy Code) arose against the debtor. *Id.* at 873. In *Macy's I*, this court noted its policy implication concern that the use of the term obligation in section 365(d)(3) had the effect of converting a pre-petition claim into an administrative expense claim. *Id.* at 873 n. 3. This result is clearly inconsistent with "other policy considerations of the Code." *Id.* Nevertheless, the plain language of the statute and the repeated admonitions from the Supreme Court not to stray from such language compelled the result that the obligation under the lease arose post-petition and had to be paid "notwithstanding section 503(b)(1)"[4] of Title 11. *Id.* at 874.

■ In short, this case is not *Macy's I*, because it does not involve a lease. Consequently, 11 U.S.C. § 365(d)(3) is not applicable and the difficulty raised by the use of the term "obligation" in that section is not at issue. It is clear that the bankruptcy claim that EPDLP seeks to have satisfied arose pre-petition. The services (use of common areas) were provided pre-petition and the taxes that form the basis of EPDLP's Claim against Macy's arose pre-petition; the Claims arose pre-petition. Thus, EPDLP does not hold an administrative expense claim under section 503(b)(1) "for services rendered after the commencement of the case."[5] *See In re Mammoth Mart, Inc.*, 536

---

**2.** At the hearing on this motion, it was clarified that the partial payments that Macy's made with respect to the common charges and taxes accruing on the 1992 obligations were intended to cover the obligations accruing post-petition. There is no dispute between the parties that common charges and taxes accruing to EPDLP after the Petition Date for which EPDLP seeks recovery from Macy's are entitled to administrative expense status.

**3.** Section 365(d)(3) provides, in relevant part,:

The trustee shall timely perform all of the obligations of the debtor ... arising from and after the order for relief under any *unexpired lease* of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. (emphasis supplied).

**4.** 11 U.S.C. § 365(d)(3).

**5.** Besides *Macy's I*, the only case cited by EPDLP regarding the timing of the Claims is *Montrose*

Centre v. Northeast Consumer Technology Stores, Inc. (In re The Appliance Store, Inc.), 148 B.R. 234 (Bankr.W.D.Pa.1992). *Montrose*, however, is distinguishable from this case for the same reasons that *Macy's I* is distinguishable. It dealt with a lease and section 365(d)(3).

As the court stated in *Montrose*:
The controlling provision with respect to this issue is 11 U.S.C. 365(d)(3).

\* \* \* \* \* \*

The clear language of [section 365(d)(3)] requires the trustee (or debtor-in-possession in a chapter 11 case) to perform in a timely manner all postpetition obligations which arise under an unexpired lease until the lease is assumed or rejected ... Included among the obligations under the leases was the obligation to pay as they became due all rentals and other charges specified therein. Accordingly, debtor is obligated by the express language of section 365(d)(3) to pay to Montrose all rentals and other charges due under the leases through September 1, 1992.

F.2d 950 (1st Cir.1976) (requiring administrative expense claimant to prove that the claim arose from a transaction with the debtor in possession.) *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 889 (Bankr.S.D.N.Y.1993) ("A claim is not entitled to priority simply because the right to payment arose after the commencement of the reorganization proceeding.") The Claims will be paid as general unsecured claims of Macy's.

### Conclusion

For the foregoing reasons, EPDLP's motion is denied. The parties are instructed to submit an order consistent with this memorandum decision.

*Montrose,* 148 B.R. 234.
Thus, like *Macy's I, Montrose,* did not deal with the issue currently before the court.